Schrein, Appellant, *v.* Fleischmann's Vienna Model Bakery, Inc.

**156**

Argued October 10, 1941.

Before Cunningham, Baldrige, Rhodes and Hirt, JJ.

*Maurice S. Levy,* for appellant.

*Frederick H. Spotts,* with him *Pepper, Bodine, Stokes & Schoch,* for appellee.

OPINION BY HIRT, J., February 28, 1942:

Claimant was injured in the course of his employment and an open agreement was entered into with his employer under which compensation was paid for fourteen weeks. At the end of that period claimant signed a final receipt. Nine days later, on September 19, 1938, he petitioned to have the receipt set aside on the ground that he "executed the final receipt in error as he thought he was able to return to work, but he is not able to do so." The board, on appeal from the order of the referee dismissing the petition, found evidence of improper conduct of the employer in taking the receipt, but because the medical testimony was "hopelessly in conflict," appointed an impartial medical expert to examine claimant. This expert found a causal connection between the injury and the disability, and his testimony at the hearing before the referee meets the required standards of proof. *Elonis v. Lytle Coal Co.,* 134 Pa. Superior Ct. 264, 3 A. 2d 995. Adopting that view in his findings, the referee then set aside the receipt and made an award on the basis of 20% partial disability. The board affirmed on the findings of the referee, but on appeal to the common pleas, the award was set aside and judgment entered for defendant. The lower court was unable to find evidence in the testimony, either of mistake of fact or improper conduct of the employer in obtaining the final receipt. In this latter conclusion we think there is error.

We are bound by the findings of the board, based upon testimony that claimant worked steadily up to the time of his injury, without evidence of disability and that the injury to his foot, though not serious in

itself, precipitated an arthritic condition which totally disabled him from his regular employment. According to the testimony, that was his condition when he signed the final receipt. The medical expert testified that he is still totally disabled but that with the proper treatment, his disability can be reduced to about 20%.

Under the circumstances, the method adopted by the employer, in itself, is some evidence of improper conduct, though not controlling. In general the practice must be condemned. Where there is a serious dispute on the question of a causal connection between the injury and an existing disability, an employer, in all fairness, should petition for a termination of the agreement, thus assuming the burden of proof, which is rightfully his, that disability from accident has ended. A final receipt should not be taken merely as a device to shift that burden to the employee.

We agree that claimant cannot rely upon mistake of fact to set aside the receipt, for it was then known to him and his employer that he was still disabled. Neither of them had a mistaken belief as to his condition at that time. The mutual mistake contemplated by the Compensation Act refers to a fact which existed at the time when the final receipt was signed. *Shetina v. Pittsburgh Ter. Coal Corp.,* 119 Pa. Superior Ct. 425, 179 A. 776. But the fact that the petition does not charge improper conduct is not fatal to the proceeding and the receipt may be set aside on that ground, though not pleaded. *Szymanski v. Culmerville Coal Co.,* 141 Pa. Superior Ct. 303, 14 A. 2d 565.

With the burden of proof on claimant, the question is whether there is evidence sufficient in quality and quantity to sustain the conclusion of the board that defendant by improper conduct induced the execution of the final receipt. The high degree of proof required in other classes of cases, where it is sought to set aside

a written instrument, is not essential in a compensation case. All that is necessary is that the evidence be such as to make it certain to the trier of the fact that grounds for revocation existed. The evidence, however, must be definite and specific and of higher quality and greater weight than is required to support an award in the first instance. *Shuler v. Midvalley Coal Co.*, 296 Pa. 503, 146 A. 146; *Federoff v. Union Collieries Co.*, 141 Pa. Superior Ct. 308, 15 A. 2d 385.

We need not go outside of defendant's testimony for some understanding of what occurred when the receipt was signed. Mr. Wiley, the president of defendant company, testified that he talked with the doctors who had treated claimant, "And predicated on the conversation I had with those men I discussed the case with him [claimant] and told him it had been my advice that he was well and discharged by the doctors......and in my conversation with Mr. Schrein the day he signed the final receipt, it was to the effect that we had to take on another man,...... and that we would not pay any further compensation in the case nor medical, and I told him he had to sign a final receipt voluntarily or not take a receipt from him, and based on that, he signed the final receipt. I told him at the time he signed the final receipt it was conclusive as far as he was concerned but he could always reopen the case if there was a question under the law......I said, as far as the doctor was concerned, he was dismissed and compensation and medical stopped the same day, as far as we were concerned." Claimant's testimony, however, goes further. He said: "I explained to Mr. Wiley the way it read here, I wasn't willing to sign under those conditions, that I wasn't absolutely well, that I felt myself, and he said it wouldn't make any difference if I was willing or not. He said, 'Your compensation expired the 10th of September and you are not here employed any more and we will not pay you compensation

......' He told me any time I wanted to file a claim against the petition I could at any time. It wouldn't make any difference." Q. "And under those circumstances you did sign that receipt?" A. "Yes."

The circumstances have a bearing upon the question. It is obvious that claimant had nothing to gain and much to lose by giving a final receipt. It is a legitimate inference that the intended effect of what was said to claimant was that he had no alternative; that he was obliged to sign the receipt and that in any event his payments of compensation would cease. Claimant was at some disadvantage. The employer presumably had an understanding of the application of the compensation law to the situation presented. Some responsibility rested on the employer to see to it that claimant's act was not prompted by a misunderstanding of its legal effect. The statement that claimant "could always reopen the case if there was a question under the law" was misleading; that, notwithstanding the receipt, he could file a claim at any time, misinformed him as to his rights.

There is sufficient evidence of improper conduct in obtaining the receipt and since, based upon this evidence, the triers of facts have so found, their conclusion is final. *Krock v. Ballard Sprague & Co.*, 104 Pa. Superior Ct. 389, 159 A. 191; *Dosen v. Union Collieries Co.*, 137 Pa. Superior Ct. 213, 8 A. 2d 442.

The judgment is reversed and is directed to be entered for claimant on the award.