Mallory *v.* Pittsburgh Coal Company, Appellant.

· Argued November 12, 1947; reargued April 16, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Howard Y. Crossland,* with him *Harold R. Schmidt, H. G. Schmidt, Miller & Schmidt* and *Rose, Eichenauer, Stewart & Rose,* for appellant.

*George I. Bloom,* with him *Bloom & Bloom,* for appellee.

OPINION BY DITHRICH, J., May 12, 1948:

Claimant was injured in the course of his employment on January 24, 1938, when a piece of coal or slate dropped on a shovel which he was using, causing the shovel end to fly up and throw dirt, coal and slate into his face and into both eyes. He was unable to see immediately following the accident and, after being led from the mine, he was referred by the mine foreman to a company doctor, who in turn referred him to Dr. D. H. Rhodes of the Mercy Hospital, Pittsburgh.

Following his hospitalization, a compensation agreement was entered into providing for the payment of compensation for total disability up to but not including March 1, 1938, the day he returned to work, or a total of five weeks, and claimant signed the final receipt. The agreement recited that the injury was to the left eye. No mention was made of the right eye.

On July 16, 1940, claimant filed a petition to have the final receipt set aside under the provisions of section 434 of the Workmen's Compensation Act, 77 PS §1001, for the reasons that he had "lost the sight of his right eye as a result of the injuries sustained on January 24, 1938," and that the final receipt was signed through a mistake of fact. At the hearing claimant moved to amend the petition so as to make it a petition to modify and reinstate the original compensation agreement according to the provisions of the second paragraph of section 413, 77 PS §772, paragraph 4 of the petition being amended so as to read: "Shoveling slate and coal that flew into both eyes, receiving foreign bodies in both eyes and injuring both eyes so as to totally impair the vision of the right eye and to impair the vision of the left eye." The amendment was allowed and, after hearing, the referee found as a fact that claimant had been injured in both eyes and set aside the final receipt, but he also found as a fact that the injury to the right eye had not caused any diminution in vision since claimant had a cataract on that eye

on January 24, 1938, and concluded that compensation should be terminated as of the date of the final receipt.

Claimant appealed to the Board and the case was remanded for the appointment of an impartial medical expert to determine whether the loss of sight in the right eye resulted from injuries received in the accident or from some other cause "entirely disassociated with the accident." After the taking of additional testimony, the referee found that claimant "lost the sight of the right eye as a result of the accident" and awarded compensation accordingly. Defendant appealed and, while the appeal was pending, petitioned the Board for a rehearing on the ground of after-discovered evidence. The petition was granted and defendant then took the testimony of two physicians who testified that they had examined the claimant in 1931 and that at that time he did not have industrial vision in his right eye. The referee again found that the loss of sight of the right eye was caused by the accident and further found as a fact, in refutation of the after-discovered evidence, that on May 9, 1934, when claimant entered the employ of defendant he had "20/20 vision in the right eye," the same as the left, as rated by defendant's medical examiner. Upon appeal both the Board and the Court of Common Pleas affirmed the award.

We most emphatically agree with the statement of the learned judge of the court below that "More than nine [now more than ten] years have elapsed since the accident occurred which brought about this claim, and more than five [now more than six] years have elapsed since the claimant moved to amend his petition. It is time that the litigation be ended and the parties be informed as to their legal rights and obligations."

The record would have been less complicated if claimant had not moved to amend his petition to set aside the final receipt, so as to make it a petition to modify and reinstate the original compensation agreement. The signing of the final receipt was due to a mutual mistake

of fact and could therefore be set aside only under the provisions of section 434. That section alone applies to agreements which have been terminated by the signing of a final receipt. Had this been a case where the .disability had recurred or increased, it would have been proper for claimant to have proceeded under the second paragraph of section 413, and he evidenced his intention so to do by amending his petition. But since the evidence established that the final receipt was signed through a mutual mistake of fact—that the vision of only one eye had been impaired by the accident, when, as a matter of fact, the vision of both eyes had been impaired, thus creating total disability—relief could be granted only by setting aside the final receipt under section 434. The setting aside of the final receipt automatically revived the agreement which was then reviewed and modified, as provided by the first paragraph of section 413, 77 PS §771.

As stated by this Court in *Bucher v. Kapp Bros.*, 110 Pa. Superior Ct. 65, 70, 71, 167 A. 652:

"The setting aside of a final receipt, upon proof that it was procured by fraud, coercion, or other improper conduct of a party, or was founded upon a mistake of law or of fact, is provided for and controlled by Section 434.

". . . Although Sections 413 and 434 are plainly intended to provide separate and distinct forms of relief—the former relating to agreements or awards and the latter only to final receipts—a tendency to confuse them, both in pleading and practice, has developed in the consideration and disposition of compensation cases.

"As this court remarked in Savidge v. Dime T. & S. Co. et al., 108 Pa. Superior Ct. 333, 164 A. 734, a prayer to set aside a final receipt is not properly a part of a petition for relief under Section 413, because that section applies only to agreements or awards and contains no reference to final receipts. . . ."

See also *Graham v. Hillman Coal & Coke Co.*, 122 Pa. Superior Ct. 579, 186 A. 400; *Gardner v. Pressed Steel Car Co.*, 122 Pa. Superior Ct. 592, 186 A. 410; *Flowers v. Liggett & Myers Tobacco Co.*, 145 Pa. Superior Ct, 230, 20. A. 2d 856,

But as this Court said in *Tubbs v. O. T. Oil Co.*, 114 Pa. Superior Ct. 375, 378, 174 A. 836: ". . . it makes no real difference under which section a petition may have been filed, provided proper ground for action by the compensation authorities under either be proved." See also *Schrein v. Fleischmann's Vienna Model Bakery, Inc.*, 148 Pa. Superior Ct. 155, 24 A. 2d 661; *Kissel v. Harbison-Walker Refractories Co.*, 157 Pa. Superior Ct. 37, 41 A. 2d 434; *Harrison v. Alden Park Manor Apts.*, 160 Pa. Superior Ct. 388, 51 A. 2d 418.

Section 434 requires a petition to set aside a final receipt to be filed within two years from the date to which payment is made, as evidenced by the final receipt. The section was amended June 21, 1939. Prior to the amendment a claimant had 600 weeks from the date of the injury within which to petition to set aside the final receipt; but, by the amendment, the time limitation was cut from 600 weeks from the date of the injury to two years from the date to which payment is made.

In *Hartman v. Pennsylvania Salt Manufacturing Co.*, 155 Pa. Superior Ct. 86, 38 A. 2d 431, it was held that while section 434 is procedural in character and therefore applicable in all cases from the effective date of the amendment of 1939, which makes it applicable in this case, subject, however, to the proviso, that if the limitation period had already run at the date of its enactment or was very close to it, the claimant must then be allowed a further reasonable time in which to file his petition. What then would be a further reasonable time under the circumstances of this case?

In *Strouse v. Quaker Knitting Mills, Inc.*, 159 Pa. Superior Ct. 39, 46 A. 2d 526, we said, pages 42-43:

"What is a reasonable time must be judicially determined from the facts and circumstances in each case." In that case we held that a claim petition filed four and one-half months after the effective date of the same Act of 1939, reducing the period within which a claim petition can be filed from two years to one year after the date of the accident, was filed within a reasonable time.

In *Kennedy v. Holmes Construction Co.*, 147 Pa. Superior Ct. 348, 24 A. 2d 451, it was held that a claim petition filed within sixteen months after the accident and within three months after the effective date of the Act of 1939 was within a reasonable time, the Court stating in an opinion by RHODES, J., now P. J., page 358: ". . . there must be a reasonable time allowed to exercise a substantive right which existed at the time of its [Act of 1939] enactment." In the *Hartman* case the petition to set aside the final receipt under section 434 was not filed until more than two years after the effective date of the Act, and it was accordingly held, page 88, ". . . that the question of a reasonable time does not here arise." And in *Ketzel v. Hammermill Paper Co.*, 159 Pa. Superior Ct. 462, 48 A. 2d 89, a similar petition was not filed until four years and eight months after claimant had executed the final receipt. We there said, in an opinion by RENO, J., page 465:

"Appellant stands squarely upon the proposition that he had 600 weeks in which to file his petition. No contention is made that he filed it within a reasonable time after the effective date of the Act of 1939, and thus came within the rule adverted to in the Hartman case. Manifestly, the rule could not save him, and discussion of it is not required."

But in our opinion the instant case *does* come within the rule adverted to in the *Hartman* case. The time for filing a petition to set aside a final receipt under section 434 was not only reduced from 600 weeks to two years, but no exception was made in the case of eye injuries so as to make section 434 consistent with section 413.

"The amendment of April 13, 1927, P. L. 186, 77 PS 772, which imposed a time limitation on the right of review, specifically excepted eye injuries. This exception, contained also in the subsequent amendments, recognizes that blindness may develop from the progressive effects of an original injury long after the initial disability, and it was the intention of the legislature to provide compensation for that loss whenever it should occur, within the general limitations of the compensation act. An agreement, potentially, may involve payments for total disability for 500 weeks": *Parks v. Susquehanna Collieries Co.,* 149 Pa. Superior Ct. 535, 541, 27 A. 2d 481. Of course, what is a reasonable time depends upon the facts and circumstances in each case, but in our opinion, in the case of eye injuries, it should not be less than the general limitation of the time the agreement has to run, viz., 500 weeks for total disability, and 300 weeks for partial disability.

Section 434, as originally enacted, provided that a final receipt could be set aside "at any time." This Court said in *Murphy v. Hudson Coal Co.,* 135 Pa. Superior Ct. 241, 244, 5 A. 2d 428:

"It has been repeatedly held that the phrase 'at any time' as used in this section, means at any time within the maximum periods provided for in the Act, namely, three hundred weeks where the disability is partial, and five hundred weeks when total: Zupicick v. P. & R. C. & I. Co., 108 Pa. Superior Ct. 165, 164 A. 731; McKissick v. Penn Brook Coal Co., 110 Pa. Superior Ct. 444, 168 A. 691; Lomancik v. Youghiogheny & Ohio Coal Co., 119 Pa. Superior Ct. 263, 180 A. 731; Nigbrowich v. State Work. Ins. Fund, 131 Pa. Superior Ct. 532, 200 A. 282."

The same phrase appearing in both paragraphs of section 413 has been similarly construed in *Zupicick v. P. & R. C. & I. Co.,* 108 Pa. Superior Ct. 165, 164 A. 731, and *Stevenson v. Westmoreland Coal Co.,* 146 Pa. Superior Ct. 32, 21 A. 2d 468.

When the amendment of 1939 was approved June 21, 1939, claimant in this case then had until March 22, 1940, which was within two years from the date to which payment was made as evidenced by the final receipt, or nine months, within which to file his petition. It was filed July 16, 1940, less than four months after the limitation period of two years had run. So whether it be held that claimant had 500 weeks within which to file his petition, as provided by section 413 in the case of eye injuries, in which case it was filed in ample time, or whether it be held that he was required to file it within two years, as provided by section 434, it is our considered opinion that under the facts and circumstances of this case it was filed within a reasonable time. What was said by this Court, speaking through STADTFELD, J., in *Murphy v. Hudson Coal Co.,* supra, page 243, may most appropriately be repeated here: "Claimant's petition is considered as having been brought pursuant to Section 434 . . . . this section being more favorable to his claim than the second paragraph of Section 413 . . ."

Had the compensation authorities found that claimant's disability had increased or recurred, then he could have proceeded under the second paragraph of section 413; but they did not so find, and, had they made a finding to that effect, we would be obliged to rule that there was not sufficient competent evidence to support it. The learned court below stated in its opinion that "The board, upon competent and ample evidence, having found that the final receipt was signed through a *mistake,* and that the claimant's right eye had been injured by the accident, it was proper for the board to make an award based upon the *increase* of disability: . . ." (Emphasis added.) There is nothing in the record to indicate that the award was based upon an increase in disability. To the contrary, the record clearly indicates that it was based upon a mutual mistake of fact in that the original agreement did not include all claimant's in-

juries, since it covered injury only to the left eye, whereas the right eye was also injured, subsequently resulting in total blindness for which he is entitled to compensation for total disability as provided in section 306 (a), 77 PS §511.

In *Mancini v. Pennsylvania Rubber Co.*, 147 Pa. Superior Ct. 359, 24 A. 2d 151, in a very comprehensive opinion by KELLER, P. J., it was held that a petition similar to the petition filed in this case entitled the claimant to whatever relief, if any, was appropriate, but that it would not be under the second paragraph of section 413 but under section 434. The Court said, pages 368-369:

"The second paragraph of section 413 relates to *changes* that have occurred in the employee's physical condition *since* the compensation agreement was entered into. The basis of appellant's present claim is that the supplemental agreement of October 2, 1930 was executed under a mistake of fact, both parties being under the mistaken impression that his injury—which at that time totally disabled him . . .—was confined to the left arm, whereas, it also involved and affected his left shoulder."

In the instant case the parties were under the mistaken impression that the injury which totally disabled claimant, at least until the day when he returned to work, was confined to the left eye, whereas it also involved and affected the right eye.

The referee found as a fact that the agreement "did not include all of the injuries sustained by the claimant, and should have included 'that dirt was thrown into both eyes'"; and found as a further fact "that, as a result of the accident . . . the claimant sustained injuries to his right eye, . . . and that, thereafter, the claimant lost the sight of the right eye as a result of the accident . . ." These findings are in line with claimant's amendment to his petition that finally read: "Shoveling slate and coal that flew into both eyes, receiving foreign bodies in both eyes and injuring both eyes so as to totally

impair the vision of the right eye and to impair the vision of the left eye" and are based on competent evidence offered in support of the amended petition.

Defendant stresses the fact that claimant signed the final receipt without reading it, although he was able to read and write, but in quoting his testimony that he did not read it, it failed to include his testimony that he "couldn't read it at that time" because of the injury to his eyes; and when he was asked if it was explained to him what was in the agreement as to his injury, he said no, all he was told was "that is the final payment." The agreement was signed in the office of the coal company. "Our compensation statute requires the utmost good faith upon the part of employers . . . in their dealings with injured employees": *Kessler v. North Side Packing Co.*, 122 Pa. Superior Ct. 565, 571, 572, 186 A. 404. It is open to question whether they showed the utmost good faith in this proceeding. Certain it is that the framers of the Act never contemplated that a claim for compensation should be protracted over a period of ten years.

Defendant urges that claimant had no vision in his right eye at the time of the accident. Yet, he went home alone after his left eye had been bandaged and was able the following day, with his left eye still bandaged, to go alone from his home in Washington, Pa., to the Mercy Hospital in Pittsburgh. We are unable to comprehend how he could get about in that manner with one eye bandaged if, as defendant contends, he was already blind in the other eye.

But to bring this opinion, and we hope this litigation, to a close, we reiterate what we have so frequently said throughout the years since the Workmen's Compensation Act was first enacted, and that is, that since the Board is the final judge of the credibility of the witnesses and the choice of what evidence is to be accepted or rejected lies with it, its findings when supported by competent evidence sufficient to justify them are bind-

ing upon the courts on review. Stripped of all its legalistic verbiage, the plain, simple question in this case is whether the accident resulted in injury to the left eye alone or to both eyes. That is a question of fact, and since it was found in favor of claimant under competent evidence sufficient to justify the finding, it must be accepted as final.

Judgment affirmed.